# MIRER MAZZOCCHI& JULIEN, PLLC

ATTORNEYS AT LAW
1 WHITEHALL ST.
SIXTEENTH FLOOR
NEW YORK, NEW YORK 10004

JEANNE MIRER        TELEPHONE: (212) 231-2235        RIA JULIEN
KRISTINA MAZZOCCHI        FACSIMILE: (212) 409-8338

August 21, 2020

**VIA CM/ECF**
The Hon. Ronnie Abrams
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

                         Re:      *Macaluso v. JZJ Services, LLC, et al.*
                                  **Dkt. No.: 20-cv-1407 (RA)**

Dear Judge Abrams:

      Pursuant to Federal Rule of Civil Procedure 41(a), Plaintiff ALEXA MACALUSO (hereafter "Plaintiff") and Defendants JZJ SERVICES, LLC, d/b/a Spa Jolie, and JODI PERSKIN KAUFFMAN, jointly and severally (collectively, "Defendants") (Plaintiff and Defendants, collectively the "Parties") submit this joint letter motion requesting that the Court approve the Parties' proposed Wage Settlement Agreement (here enclosed as "Exhibit A"), and to dismiss this case with prejudice per the enclosed Stipulation of Dismissal with Prejudice ("Exhibit I to Exhibit A".

      Therefore, the Parties seek the Court's approval of this Wage Settlement Agreement in accordance with the requirements of the FLSA and the recent decision of the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ( ". . . stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect.").

      By way of background, on February 19, 2020, Plaintiff filed a Class and Collective Action Complaint against Defendants seeking redress for alleged unpaid compensation, specifically minimum wages, overtime compensation and spread of hours premiums, pursuant to the Fair Labor Standards Act ("FLSA"), the New York Labor Law, and the New York State Department of Labor

regulations ("NYLL") as well as Unlawful Discriminatory Practices in violation of New York City Human Rights Laws, §§8-107(1)(a) and (19).[1]

      Since the filing of the Complaint, the parties have been engaged in continuous and extensive settlement negotiations, with the exchange of voluminous time and payroll records, which have finally resulted in a proposed settlement of this action. Although the Complaints were drafted and filed as a class and collective action pursuant to the Federal Rules of Civil Procedure, Rule 23, and the FLSA, 29 U.S.C. § 216, the issue of certification was never litigated or decided and this matter is being settled between the named Parties only.

      Plaintiff worked as nail and spa technician for Defendants' nail salon and spa for several years. Plaintiff worked from on or about May 2006 through November 7, 2019. After her separation from employment, Plaintiff filed the instant matter. Defendants' chief defense was that Plaintiff was properly paid and Plaintiff was not entitled to the claimed wages. According to Defendants, Defendants' records indicated that Plaintiff worked fewer hours than had been alleged in the Complaint. Plaintiff acknowledged Defendants have produced weekly time records that indicated fewer hours than what she had alleged in the Complaint.

      Plaintiff's counsel calculated the Plaintiff's estimated damages by taking into account various legal and factual issues in dispute that could potentially preclude or limit Plaintiff's recovery. Defendants disputed Plaintiff's allegations in their entirety and provided time and payroll records which substantiated their defenses.

      After an extensive review of available time and payroll records supplied by Defendants, and after extensive discussions amongst the parties as to the issues, it was decided that a settlement was in order so as to avoid an uncertain result from a trial on the merits. Hence, the parties agreed to a compromise and settled the claims alleged by the Plaintiff.

      The Parties continue their *bona fide* dispute regarding the number of hours worked by Plaintiff, and the sum, owed to Plaintiff, if anything, for wages. To avoid the costs associated with further litigation and the uncertainty of outcome, the Parties wish to fully and finally resolve all of Plaintiff's wage claims in this action now. Therefore, the Parties seek the Court's approval of this settlement in accordance with the requirements of the FLSA and the recent decision of the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)( ". . . stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect.").

      The Parties, through their respective counsel, reached this amicable Wage Settlement Agreement over legally and factually disputed claims. The Parties and their respective counsel believe that the proposed settlement between the Parties is a fair and reasonable resolution, and in the mutual best interest of the Parties, considering all of the contested issues in this case. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 322, 335 (S.D.N.Y. 2012); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

---

[1] The settlement of the individual claims is not the subject of this fairness letter or before this Honorable Court for approval.

The Parties have agreed to settle Plaintiff's claims by the execution of two separate settlement agreements. The first settlement agreement covers Plaintiff's FLSA and NYLL claims ("FLSA Settlement Agreement"), and is the settlement agreement that the Parties seek the Court's approval, as required by *Cheeks*, cited *supra*. Accordingly, the Wage Settlement Agreement is the subject of this Fairness Letter. The second agreement covers Plaintiff's remaining claims related to discrimination ("Discrimination Settlement Agreement"), for which no Court approval is required, and thus the Parties do not seek Court approval of the Discrimination Settlement Agreement.

The Wage Settlement Agreement provides that Defendants agree to pay Plaintiff the total sum of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) for full-resolution of the Plaintiff's FLSA and NYLL claims. The attorneys' fees, inclusive of costs to Plaintiff's counsel, are Eight Thousand Three Hundred and Thirty-Three Dollars and Thirty-Three Cents ($8,333.33), which is 1/3 of total recovery typically sought by the Plaintiff's wage and hour recovery.

The Parties submit that the Court should approve the Settlement Agreement as fair and reasonable, including the stipulated attorneys' fees, under the factors set forth in *Wolinsky*, 900 at 335, and in accordance with the *Cheeks* guidelines. 796 F.3d 199 (2d Cir. 2015). There is a presumption of fairness with the Court's principal inquiry directed at whether the proposed settlement constitutes a "reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights." *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. 2008) (alteration in original) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 [11th Cir. 1982]); see also, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Garcia v. BAE Cleaners Inc.*, 2012 WL 1267844 (S.D.N.Y. 2012) (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. 2011). In determining whether a proposed settlement is fair and reasonable, the Court should consider the totality of circumstances, including but not limited to the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

Here, all Parties were counseled and represented by their respective attorneys throughout the settlement process. The Wage Settlement Agreement was negotiated at "arms' length" through the Parties' respective attorneys after extensive negotiations. The proposed settlement is the product of serious and informed negotiations between the Parties and their counsel. The case was complex in that there were complicated claims involving tip credits and spread of hours issues as well as overtime calculations. Ultimately, the settlement dialogue resulted in an agreement on all material terms.

Here, Plaintiff alleges that if she is successful on all aspects of her minimum wage, overtime, and spread of hours claims, including the allegations in the Complaint about the hours of overtime Plaintiff worked that were based on her initial recollection alone, she could recover up

to approximately $111,674 in unpaid wages, if she was not deemed a tipped employee. Defendants believe that Plaintiff is not owed any money for any of the claims alleged in their Complaint and in light of her status as a tipped worker. However, in light of the uncertainties of trial, and the costs of defending this matter, Defendants have decided to resolve all claims asserted by Plaintiff. Moreover, Plaintiff's position on settlement is also supported because of the inherent risks of litigation, including the risks associated with the burdens of collection, it is possible Plaintiff would recover nothing (e.g. should defendants become bankrupt in part due to the pandemic which required Defendants to close for several months and to operate at partial capacity into the future). The present settlement will enable the parties to avoid the burdens and expenses associated with establishing their respective positions on the facts at trial. In addition, Plaintiff will be able to avoid the expense and delay of litigation and the risk of obtaining no recovery due to failure at trial or failure to collect on a judgment. While under the Settlement Agreement Plaintiff will not recover all that she initially claimed she was owed based on her recollection and few records in her possession at that time, it is Plaintiff's position that Plaintiff will, however, recover more than is owed to her, based on Defendants' records.[2]

The settlement also meets the guidelines set forth in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). *See also Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560 (E.D.N.Y. Oct. 28, 2015). Specifically, as prohibited by *Cheeks*, the instant settlement does not contain a confidentiality provision; the release agreed to by Plaintiff only releases Defendants' from claims relating to Plaintiff's employment; and Plaintiff's attorneys' fees are 33% of the total settlement, which is well within the range of recovery accepted routinely by the Court (See Exhibit B, Plaintiff's Retainer).

Mirer Mazzocchi & Julien, PLLC is a three-person law firm practicing almost exclusively in federal employment litigation with a concentration on wage claims under FLSA and associated state laws in New York. Combined, Plaintiff's attorneys have almost 25 years of experience in the almost exclusive prosecution of FLSA matters and over 60 years of combined experience concentrating in litigation matters generally.

While courts may approve attorneys' fees on the basis of either a lodestar calculation or a percentage of the common fund, "the trend in this Circuit is toward the percentage method." *WalMart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The Second Circuit has reasoned that the lodestar method "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and these reasons also can create a disincentive to early settlement." *McDaniel v County of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010). In this Circuit, district courts typically approve attorneys' fees in the range of 30% - 33 1/3% in FLSA cases. See, *Santos v. El Tepeyac Butcher Shop Inc.*, 2015 WL 9077172, at *4 (S.D.N.Y. Dec. 15, 2015); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y March 20, 2014). One third contingency fees for attorneys representing Plaintiff in wage and hour litigation have been found to be necessary for furthering the broad remedial purpose of the FLSA and NYLL. See, *Khait v Whirlpool Corp.*, 2010 WL 2025106 (E.D.N.Y. 2010).

This Court's approval of the Settlement Agreement is an express condition of the settlement, and the Parties have agreed to take all steps necessary to dismiss the lawsuit with

---

[2] Again, Defendants believe that Plaintiff is owed nothing.

prejudice. The Parties respectfully request that the Court approve this settlement as fair and reasonable and enter the Stipulation of Dismissal with Prejudice attached hereto.

Respectfully submitted,

/s/Jodi Jaffe  
Jodi J, Jaffe, Esq.  
jjaffe@jaffeglenn.com  
Jaffe Glenn Law Group, P.A.  
33 State Road, Suite 1A  
Princeton, NJ 08540  
Telephone: (201) 687-9977  
Facsimile: (201) 595-0308  
*Attorneys for Defendants*

/s/ Ria Julien  
Ria Julien, Esq.  
Mirer Mazzocchi &Julien, PLLC  
1 Whitehall St., 16th floor  
New York, NY 10004  
Phone: 212-231-2235  
Email: rjulien@mmsjlaw.com  
*Attorneys for Plaintiff*

Enclosures:  
Exhibit A: Proposed Wage Settlement Agreement  
Exhibit B: Plaintiff's Retainer